#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRYAN L. K., | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| vs. | )    Case No. 23-CV-470-JFJ |
| | ) |
| CAROLYN W. COLVIN,[1] | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
|     **Defendant.** | ) |

### OPINION AND ORDER

Plaintiff Bryan L. K. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court reverses and remands the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.**     **General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental

---

[1] Effective November 30, 2024, pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion [is not sufficient] to establish the existence of an impairment(s)." 20 C.F.R. § 404.1521. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the impairment prevents the claimant from continuing his past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies his burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national

economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

II.    **Procedural History and the ALJ's Decision**

On February 22, 2021, Plaintiff, then a 53-year-old male, protectively applied for a period of disability and disability insurance benefits under Title II. R. 236-237. Plaintiff alleges he has been unable to work since an onset date of January 22, 2018, due to five-year opioid addiction, depression, and anxiety. R. 236, 270. Plaintiff's claim for benefits was denied initially and on reconsideration. R. 92-98, 105-110. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted a telephonic hearing on September 6, 2022. R. 30-72, 111-112. The ALJ issued a decision on May 5, 2023, denying benefits and finding Plaintiff not disabled because he could

3

perform other work existing in the national economy. R. 17-25. The Appeals Council denied review, and Plaintiff appealed to this Court. R. 1-3; ECF No. 2.

The ALJ found Plaintiff's date last insured was December 31, 2019. R. 19. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity during the period from January 22, 2018, through his date last insured. *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: depression, bipolar/manic disorder, anxiety, and substance addiction disorders (drugs). *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. R. 19-20. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had mild limitations in the two areas of (1) understanding, remembering, or applying information and (2) adapting or managing oneself; and moderate limitations in the two areas of (3) interacting with others and (4) concentrating, persisting, or maintaining pace. R. 20.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:

> able to understand, remember and carry out simple and detailed tasks with routine supervision, able to concentrate, pace and persist for extended periods with routine work breaks, able to interact with supervisors and co-workers on a superficial work basis, occasional interaction with the general public, and can respond appropriately to changes in a routine work setting.

R. 21. At step four, the ALJ found Plaintiff was unable to perform his past relevant work as a lawyer. R. 23-24. However, based on the testimony of a vocational expert ("VE"), the ALJ found at step five that Plaintiff could perform other occupations existing in significant numbers in the national economy, such as Office Helper, Mail Clerk, and Document Preparer. R. 24-25. The ALJ determined the VE's testimony was consistent with the information contained in the

4

Dictionary of Occupational Titles ("DOT"). R. 25. Accordingly, the ALJ concluded Plaintiff was not disabled from January 22, 2018, through December 31, 2019, the date last insured. R. 25.

### III.     Issues

Plaintiff raises two points of error in his challenge to the denial of benefits: (1) the ALJ improperly evaluated the medical source opinion of Curtis Grundy, Ph.D.; and (2) the ALJ's consistency analysis was improper. ECF No. 16. The Court finds the ALJ committed reversible error in failing to properly evaluate Dr. Grundy's medical opinion. The Court does not reach Plaintiff's other allegation of error.

### IV.     The ALJ's Analysis of Dr. Grundy's Medical Opinion Was Legally Flawed

Plaintiff contends the ALJ committed reversible error, because he failed to properly evaluate the persuasiveness of Dr. Grundy's medical opinion. ECF No. 16 at 2-6.

For claims filed after March 27, 2017, such as Plaintiff's claim, 20 C.F.R. § 404.1520c provides that the ALJ will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ now need only articulate how persuasive he finds each medical source's opinion. 20 C.F.R. § 404.1520c(b). Persuasiveness is based primarily on an opinion's supportability and consistency, and the ALJ must explain how he considered those two factors. 20 C.F.R. § 404.1520c(b)(2). For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). For consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

5

The ALJ may, but is typically not required to, discuss other considerations that may affect the persuasiveness of a medical opinion, such as the source's relationship with the claimant, the source's area of specialization, and other factors tending to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(b)(2)-(c).

The regulations "do not prescribe the depth at which the ALJ must discuss" the supportability and consistency factors. *J. T. L. v. Kijakazi*, No. 22-cv-02343, 2023 WL 5017241, at *5 (D. Colo. Aug. 7, 2023) (citation and internal quotation marks omitted). At minimum, the ALJ must provide "sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *Frazier v. Kijakazi*, No. 20-1147, 2022 WL 682661, at *5 (D.N.M. Mar. 8, 2022) (explaining ALJ's reasoning must be free of "rote analysis and conclusory explanations") (quotations omitted). *See also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (stating that the proper inquiry on judicial review is whether the reviewing court "can follow the adjudicator's reasoning" and "can determine that correct legal standards have been applied"); *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (stating ALJ's rationale must be "sufficiently specific" to permit meaningful appellate review.).

### A. Dr. Grundy's Evaluation and Opinions

Dr. Grundy completed a psychological evaluation in January 2019 to determine how Plaintiff's mental impairments affected his ability to practice law. R. 436-442.[2] At the evaluation, Plaintiff was cooperative, responsive, and appropriately oriented, but he requested several breaks to remain composed. R. 439. Dr. Grundy observed that Plaintiff was "clearly severely depressed" and that he became anxious and apprehensive when discussing his symptoms. *Id.* Plaintiff

---

[2] Plaintiff, a former attorney, was referred to Dr. Grundy by the Oklahoma Bar Association due to his involvement in disciplinary proceedings. R. 436.

exhibited poor concentration, delays in responding, decreased psychomotor activity, and limited energy for elaboration, though his thoughts remained relevant, coherent, logical, and goal directed. *Id.*  Plaintiff denied thoughts of suicide but acknowledged that he had recurrent thoughts of wishing he was not alive.  R. 440.  Plaintiff showed some difficulty with spontaneous recall of information but did not otherwise exhibit memory deficits.  R. 439.

Dr. Grundy administered several assessments to Plaintiff.  R. 440-441.  Plaintiff's scores on the Reynolds Intellectual Assessment Scales-2 ("RIAS-2") indicated that his intellectual functioning did not negatively affect his ability to practice law.  R. 440.  Likewise, his scores on the Mini Mental Status Examination-2 ("MMSE-2") did not indicate a mental impairment.  *Id.*  However, Plaintiff's score on the Beck Depression Inventory-2 ("BDI-2") evidenced severe depressive symptomatology.  R. 441.  On the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2"), Plaintiff produced a MMPI-2 profile that reflects a depressed mood.  R. 440.  Based on the evaluation, Dr. Grundy found diagnostic impressions of major depressive disorder; persistent depressive disorder; generalized anxiety disorder; and panic disorder.  R. 441.

Dr. Grundy opined that Plaintiff's impaired mental functioning impacts his capacity to think clearly and effectively function in work and relationships.  *Id.*  Dr. Grundy further opined that Plaintiff was experiencing symptoms of mental illness that impair his capacity to properly and reasonably perform job-related duties in the practice of law.  R. 441-442.  The ALJ summarized portions of Dr. Grundy's examination and found his opinions "somewhat unpersuasive."  R. 22-23.  The ALJ found Dr. Grundy's opinions "somewhat supported" by cited exam findings but "somewhat inconsistent" with Plaintiff's activities of daily life that indicate a higher level of functioning.  R. 23.

7

### B.     ALJ's Analysis

Plaintiff contends the ALJ's supportability and consistency analysis related to Dr. Gundy's medical opinion is inadequate and not supported by substantial evidence. ECF No. 16 at 2-6. The Court finds no error in the ALJ's supportability analysis. However, the Court concludes the ALJ committed reversible error in evaluating the consistency of Dr. Grundy's opinion and that such error was not harmless.

#### 1.     Supportability

First, though limited, the Court finds no error in the ALJ's supportability analysis. The ALJ concluded that Dr. Grundy's opinions were "somewhat supported" by "cited exam findings." R. 23. When discussing the objective medical evidence of record, the ALJ discussed certain portions of Dr. Grundy's examination. For instance, the ALJ discussed Dr. Grundy's finding that Plaintiff did not exhibit apparent memory deficits except for some difficulty in spontaneous information recall. R. 22 (citing R. 439). The ALJ also discussed that Plaintiff's MMSE-2 score did not indicate that he suffered from a mental status impairment. *Id.* (citing R. 440). This analysis is sufficient under the regulations. An ALJ is not required to restate evidence when discussing the persuasiveness of a medical opinion. *See Ursery v. Kijakazi*, No. 20 CV 1781, 2022 WL 4234991, *11 (E.D. Mo. Sept. 14, 2022) (finding no error where ALJ incorporated by reference evidence previously discussed instead of restating it when evaluating persuasiveness of medical opinion). Because ALJ's references "cited exam findings" in his supportability analysis and previously discusses such evidence earlier in the decision, the Court can follow the ALJ's reasoning and determines that the correct legal standards were applied regarding the supportability of Dr. Grundy's opinions. *See Keyes-Zachary*, 695 F.3d at 1166.

**2.     Consistency**

The Court finds reversible error with the ALJ's consistency analysis, because the ALJ did not sufficiently explain how Dr. Grundy's opinions were "somewhat inconsistent with [Plaintiff's] activities of daily life [that indicate] a higher level of functioning."  R. 23.  Unlike the ALJ's supportability analysis, there is no reference to previously "cited" evidence.  Further, the only activities of daily life previously outlined in the ALJ's decision are that Plaintiff can drive and prepare simple meals; has not been hospitalized for mental health issues since June 2021; no longer uses opioids; lives with his mother; can lift 25 to 30 pounds; can pick up coins off a table and objects dropped on the floor; reads a lot; and occasionally golfs.  R. 20-22.  Without some explanation, it is unclear how Plaintiff's ability to drive, read, prepare simple meals, and/or golf is inconsistent with Dr. Grundy's opinions that Plaintiff's "debilitating symptoms" impaired his capacity to effectively function in work and social relationships.  This constitutes reversible error.  *See J. T. L.*, 2023 WL 5017241, at *8 ("Simply identifying a purported inconsistency, without explaining *why* it is an inconsistency, is insufficient to meet the [r]egulations' articulation requirements.").  This is especially true in cases, like this one, where there is no "obvious bridge between the cited evidence and the ALJ's conclusion."  *Todd R. v. Kijakazi*, No. 23-cv-00039, 2023 WL 7168780, *4 (D. Utah Oct. 31, 2023) (explaining that, "without further explanation, the reference to [daily] activities do not provide valid bases for rejecting a medical opinion").

The Commissioner argues the ALJ's brevity "does not equate to insufficiency."  ECF No. 20 at 9.  While true that the regulations do not require thorough articulation of the supportability and consistency factors, the Court must still be able to follow the ALJ's reasoning to ensure the correct legal standards were applied.  *See Keyes-Zachary*, 695 F.3d at 1166; *Oldham*, 509 F.3d at 1258.  The ALJ's threadbare consistency analysis prevents the Court from making that

determination.  In this case, the ALJ *only* states that Dr. Grundy's opinions are somewhat inconsistent with Plaintiff's activities of daily living.  The ALJ does not explain *how* Plaintiff's activities are inconsistent, nor does he explain *what* specific activities he is basing this conclusion on.  Without more, the Court in unable to follow the ALJ's reasoning, resulting in error.  *See Todd R.*, 2023 WL 7168780, at *4 (finding ALJ committed reversible error where he did not adequately explain how plaintiff's activities of daily living, including the ability to travel and live with others, was inconsistent with medical opinion); *J.T. L.*, 2023 WL 5017241, at *8 (finding ALJ committed reversible error where she did not adequately explain how plaintiff's activities of daily living, including the ability to drive, was inconsistent with medical opinion).

The ALJ's error is not harmless.  Given the ALJ's flawed assessment, the Court cannot confidently conclude that the ALJ's conclusion regarding Dr. Grundy's opinions, or the RFC, would have remained unchanged with a proper evaluation.  *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (finding that harmless error doctrine applies only in the "exceptional circumstance" where the court could "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way").  Dr. Grundy performed psychological testing on Plaintiff and opined that Plaintiff's "capacity to effectively function in work and relationships" was impaired by his "debilitating symptoms of depression and anxiety."  R. 441.  Based on Dr. Grundy's evaluation and opinions, a reasonable factfinder could have included more restrictive mental limitations than those accounted for in the RFC, such as limiting Plaintiff to no contact with coworkers or the public.  Therefore, the Court finds the ALJ's failure to properly evaluate Dr. Grundy's opinions was not harmless and requires reversal for further consideration and discussion.  *See Todd R.*, 2023 WL 7168780, at *5 (finding

ALJ's failure to adequately explain evaluation of medical opinion was harmful error, because proper evaluation could have potentially altered RFC).

### V.      Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 19th day of December, 2024.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT**